**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **KATHRYN A. SMITH** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 4:16-cv-1349** |
| | ) | |
| **MACON ELECTRIC COOPERATIVE,** | ) | |
| | ) | |
| **and** | ) | **JURY TRIAL DEMAND** |
| | ) | |
| **BOARD OF DIRECTORS OF** | ) | |
| **MACON ELECTRIC COOPERATIVE,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DOUG DRAKE** | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

**JURISDICTION AND VENUE**

1.      Original federal question jurisdiction of this Court is proper pursuant to Article

III, Section 2 of the United States Constitution and 28 U.S.C. § 1331 which provides that federal

courts shall have jurisdiction over federal questions; Plaintiff alleges causes of action under the

Age Discrimination in Employment Act, 29 U.S.C. § 626(c)(1), and Title VII of the Civil Rights

Act, 42 U.S.C. § 2000e-5.

2.      The claims in this action arise out of acts that are alleged to have been undertaken

and injuries that are alleged to have been suffered in Macon County, Missouri, which is in the

Eastern District of Missouri; venue in this Court is proper pursuant to 28 U.S.C. § 1391 and

Local Rule 3-2.07(A)(2) and (B)(2).

3.      Plaintiff appends three (3) state law claims for violation of the Missouri Human

Rights Acts (hereinafter "MHRA"), the facts and circumstances of which arise from the same

1

nexus as those of the age and gender discrimination and hostile work environment claims under

the ADEA and Title VII.  This Court has supplemental jurisdiction over these claims pursuant to

28 U.S.C. §1367.

## PARTIES

4.      Plaintiff Kathryn A. Smith ("Smith") is a United States citizen and Missouri

resident, a 56-year-old woman, and at all relevant times a resident of Macon County, Missouri.

Plaintiff was employed by Macon Electric Cooperative in Macon, Missouri, at all relevant times,

last holding the position of Office Manager. Smith resides at 1204 Cherry Lane, Macon,

Missouri, 63552.

5.      Macon Electric Cooperative (MEC) is a rural electric distribution cooperative and

a member-owned Missouri non-profit corporation with its principal place of business at 31571

Business Hwy 36, Macon, MO 63552.

6.      MEC is operated by Defendant Board of Directors ("Board"), which is composed

of nine members elected in staggered three-year terms. The Board may be served at 31571

Business Hwy 36, Macon, MO 63552.

7.      Defendant Doug Drake is a Missouri resident and was MEC's General Manager

and Smith's supervisor at all times relevant to this Complaint on and before January 7, 2016.

Drake's current address is unknown to Plaintiff.

8.      MEC is an "employer" for purposes of the Age Discrimination in Employment

Act because MEC is, and all relevant times was, a person engaged in an industry affecting

commerce with 20 or more employees for each working day in each of twenty or more calendar

weeks in the current or preceding calendar year. *See* 29 U.S.C. § 630(b).

9.      MEC is an "employer" for purposes of Title VII because MEC is, and at all

relevant times was, a person engaged in an industry affecting commerce with 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and is not the United States or any corporation wholly owned by the Government of the United States, an Indian tribe, any department or agency of the District of Columbia, or a bona fide private membership club. *See* 42 U.S. Code § 2000e(b).

10.     MEC is an "employer" for purposes of the Missouri Human Rights Act because MEC at all relevant times employed six or more persons within the state and is not a corporation or association owned and operated by any religious or sectarian group.

11.     The Board is an employer for purposes of the Missouri Human Rights Act because MEC is an employer and the Board at all relevant times directly acted in the interest of MEC.

12.     Drake is an employer for purposes of the Missouri Human Rights Act because MEC is an employer and Drake at all relevant times directly acted in the interest of MEC.

## ALLEGATIONS OF FACT AND LAW

13.     From November 1, 1989 to January 13, 2016, Smith was employed by MEC, last holding the position of Office Manager.

14.     Smith was MEC's Office Manager at all times relevant to this Complaint.

15.     On and before January 7, 2016, as General Manager, Drake supervised Smith.

16.     Around July 2011, Smith began spending time with Ken Wooldridge, a widower who had been a director on the Board for decades.

17.     In October 2011, Wooldridge told the other Board members that he was seeing Smith.

18.     At the time, no one on the Board expressed any objection.

3

19.     Around this time, Smith began to feel she was being subjected to harassment and a hostile work environment, which she believed to be due in part to her sex and age.

20.     In June 2012, the Board voted that Wooldridge would take a departing Board member's place as MEC's representative to a regional electric cooperative board, which angered some Board members.

21.     At the Board's next meeting, in July 2012, some members of the Board now expressed concern for the first time over Plaintiff's relationship with Smith, alleging a conflict of interest.

22.     At the meeting, the Board passed a resolution declaring that the relationship constituted a conflict of interest, and requested that Wooldridge resign from the Board.

23.     Seeing no conflict, Wooldridge refused to resign.

24.     The allegation of a conflict of interest was brought up repeatedly, in several subsequent Board meetings.

25.     In the fall of 2013, the Board voted to direct Drake not to give raises to two employees: Smith and one other employee.

26.     Wooldridge called Drake and other Board members and criticized the decision, telling them it was unfair because every other employee had received a raise.

27.     In November 2013, the Board voted to find that Wooldridge had violated a "board policy" on conflicts of interest by "lobbying" for a pay raise for Smith.

28.     In August 2014, the Board proposed an amendment to the MEC bylaws that would redefine "conflict of interest" so that the definition would include Wooldridge's alleged actions.

29.     On October 11, 2014, Smith sent a letter to Drake informing him that her

4

"workplace environment at Macon Electric Cooperative has become increasingly hostile" due to reasons described in the letter, including that:

    a.   Her duties had been reduced without prior communication with her;

    b.   Her duties had been reassigned to younger employees;

    c.   Her access to files and computer drives had been removed without notice;

    d.   Her salary was frozen despite her never having received a negative performance review; and

    e.   Her ability to do her job was being otherwise interfered with.

30.     In the October 11, 2014 letter, Smith wrote: "I am left to conclude that my gender and/or age have been contributing factors in decisions that ultimately are being designed to eliminate my position, demote me, and/or result in involuntary separation of my employment with Macon Electric Cooperative." *See* Exhibit A.

31.     Smith had been scheduled to receive an employee performance evaluation around this time.

32.     On October 16, 2014, Drake sent an email to Smith stating, "Due to your discrimination allegations your performance evaluation will be postponed until a later date and time." *See* Exhibit A.

33.     Smith never received another performance evaluation during her employment at MEC.

34.     On November 18, 2014, Smith sent Drake a letter explaining that he was not affording her sufficient time to complete a major project, even though other employees had been given more time and more resources to complete similar projects. *See* Exhibit A.

35.     On November 20, 2014, Smith sent a letter to the then-President of the Board,

Robert Long, alleging that Drake was subjecting her to a "continuing and increasing hostile work environment" and retaliation for complaining of the hostile work environment and discrimination and asking Long to intervene. *See* Exhibit A.

36.     On March 10, 2015, Smith filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR), Charge No. 28E-2015-00758C ("First Charge"), alleging discrimination because of her sex and age, retaliation, and hostile work environment, which document Smith hereby incorporates by reference into this Complaint, including attachments. (Exhibit A, attached to the Complaint, is hereby incorporated by reference and made a part of the allegations contained in the Complaint).

37.     Soon after Smith filed the First Charge, Smith began to suffer increased harassment and hostility at work.

38.     Drake removed some of Smith's duties, excluded her from meetings and other events she had formerly participated in, and began criticizing Smith's work.

39.     Such and similar harassment continued throughout the rest of Smith's employment.

40.     On or about August 3, 2015, the President of the Board at the time, Harold Beach, placed an advertisement in several local publications entitled "MEC MEMBER ALERT!!" which contained a list of accusations against Smith and Wooldridge and urging MEC members to vote against re-electing Wooldridge in an upcoming Board election.

41.     Among other statements, the "MEC MEMBER ALERT!!":

a. Publicly announced that in October 2014 Smith "began making accusations of discrimination against" MEC;

b. Complained that Smith's complaints had cost MEC attorney fees, and

6

therefore cost the members to whom the advertisement was addressed;

c.   Claimed that a "neutral HR consultant" had investigated and found "no

discrimination";

d.   Publicly announced that in November 2014 Kay made "more allegations

which are again investigated by the HR consultant who again finds no

wrongdoing by" MEC; and

e.    Alleged that Wooldridge had improperly lobbied for a raise in Smith's pay.

42.    At the bottom of the "MEC MEMBER ALERT!!" appeared "Harold E. Beach,

President: MEC" and Beach's phone number.

43.    The Board's secretary/treasurer, Glenda Wood, sent a letter to at least one MEC

member vouching that the "MEC MEMBER ALERT!!" was "a timeline of the facts as per board

minutes and the Truth!"

44.    Wooldridge was subsequently re-elected by the MEC members.

45.    After Wooldridge was re-elected, the Board called a special meeting for October

3, 2015, at which attending MEC members would vote on removing Wooldridge from office,

based on the same accusations already circulated in the "MEC MEMBER ALERT!!"

46.    At the special meeting, the members in attendance voted to remove Wooldridge

from the Board.

47.    On January 7, 2016, Drake's employment concluded.

48.    On or about January 7 and 8, 2016, the Board interviewed MEC office employees

for the stated reason that the Board needed to gather information for use in evaluating candidates for

Drake's General Manager position and in making MEC a better working environment.

49.    A former board member told Smith that he overheard the MEC attorney state that the

7

actual purpose of these interviews was to gather information from employees to justify Smith's termination.

50.     The former board member also told Smith that when he was on the board, there had been a discussion about how Mr. Drake was going to make Smith's job so difficult that she would resign.

51.     On January 11, 2016, Smith emailed the Board president and attorney asking for a meeting to discuss her complaint to the EEOC, saying she wanted to resolve the issues it raised and move on, but she received no response.

52.     On January 13, 2016, Smith was called into a meeting that included the president of the Board, the Board's secretary, another director, and an attorney for the Board.

53.     The attorney informed Smith that her employment was terminated.

54.     The attorney listed several reasons for Smith's termination, but when Smith asked for a copy of the list, the attorney refused to provide it to her.

55.     Upon information and belief, the reasons for termination Smith was given in the January 13, 2016 meeting were pretextual and intended to conceal the discriminatory and retaliatory motives for her termination.

56.     On or about February 1, 2016, Smith filed another charge of discrimination with the MCHR ("Second Charge"), alleging discrimination and retaliation in violation of the Missouri Human Rights Act, The Age Discrimination in Employment Act, and Title VII of The Civil Rights Act of 1964, as amended, which Plaintiff incorporates by reference into this Complaint, including attachments. (See Exhibit B, attached to the Complaint, which is hereby incorporated by reference and made a part of the allegations contained in the Complaint).

57.     The EEOC issued Smith a notice of her right to sue on May 23, 2016. (See

Exhibit C, attached to the Complaint, which is hereby incorporated by reference and made a part of the allegations contained in the Complaint).

58.     The MCHR issued Smith two notices of her right to sue on August 15, 2016. (See Exhibits D and E, attached to the Complaint, which are hereby incorporated by reference and made a part of the allegations contained in the Complaint).

59.     This Complaint is filed within 90 days of EEOC's and MCHR's issuance of right to sue notices to Smith and within two years after the occurrence of all the conduct complained of in this Complaint.

60.     Under §§ 213.010 and 213.055, RSMo, Plaintiff is a member of a protected class because at all times relevant to the allegations contained in this Complaint, Plaintiff was a female over the age of forty (40) years but under the age of seventy (70) years.

61.     Under 29 U.S.C. § 631, Plaintiff is a member of a protected class because at all times relevant to the allegations in this Complaint, Plaintiff was an employee over the age of forty (40) years and was not a bona fide executive or high policymaker.

62.     The Age Discrimination in Employment Act, 29 U.S.C. §623 (a)(1) provides, "It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

63.     Defendants MEC, Board, and Drake discriminated against Plaintiff on the basis of age by reducing her duties and reassigning her duties to younger employees; freezing her salary, despite no negative performance reviews, at a time when younger employees received raises; subjecting her to a hostile work environment in part because of her age; and terminating her as the culmination of a years-long course of harassment and attempt to push her out of her job.

9

64.     Revised Missouri Statute §213.055.1(a) provides that "it shall be an unlawful employment practice: for an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual: (a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability."

65.     Defendants MEC, Board, and Drake discriminated against Plaintiff because of age by reducing her duties and reassigning her duties to younger employees; freezing her salary, despite no negative performance reviews, at a time when younger employees received raises; subjecting her to a hostile work environment in part because of her age; and terminating her as the culmination of a years-long course of harassment and attempt to push her out of her job.

66.     Defendants MEC, Board, and Drake discriminated against Plaintiff because of sex by harassing her and subjecting her to a hostile work environment in part because she was a female associated with Wooldridge, whom the Board wanted to remove form office, in part because of the romantic relationship, and by terminating her as the culmination of the years-long course of harassment and attempt to push her out of her job.

67.     Revised Missouri Statute § 213.070(2) provides that "[i]t shall be an unlawful discriminatory practice … To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter."

68.      Defendants MEC, Board, and Drake retaliated against Plaintiff in violation of § 213.070(2) by harassing her and subjecting her to a hostile work environment because she

10

complained of discrimination, harassment, and hostile work environment in her October 11, 2014 letter, her November 18, 2014 letter, her November 20, 2014 letter, and the First Charge filed with the MCHR, including by refusing to give Plaintiff an annual performance review explicitly because of her having complained in the letter; removing and reducing her duties; requiring her to complete a large project in an unreasonably short time with unreasonably limited resources, when under similar circumstances other employees would be given more time and resources; publicly accusing her in the "MEC MEMBER ALERT!!" of complicity in wrongdoing and of costing the members attorney fees by filing her complaint; and terminating her as the culmination of a years-long course of harassment and attempt to push her out of her job.

69.     Title VII of the Civil Rights Act, 42 U.S.C. 2000e-2(a) Employer practices states, "It shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

70.     Defendants MEC, Board, and Drake discriminated against Plaintiff with respect to her compensation, terms, conditions, or privileges of employment because of her sex by harassing her and subjecting her to a hostile work environment in part because she was the female associated with Wooldridge, whom the Board wanted to remove form office, in part because of the romantic relationship, and by terminating her as the culmination of the years-long

course of harassment and attempt to push her out of her job.

## COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## 42 U.S.C. § 2000 et seq.

71.     Plaintiff re-alleges and repeats the allegations set forth in paragraphs 1 to 70, supra, and incorporates them herein as if fully set forth.

72.     Defendants discriminated against Plaintiff because of her sex, including by refusing to give her a regular raise, subjecting her to harassment and a hostile work environment, retaliating against her for complaining of unlawful discrimination, and terminating her.

73.     Plaintiff's gender and/or complaints of discrimination were motivating factors in the decision by Defendants, one or more of them, to terminate Plaintiff.

74.     The unwelcome gender discrimination stated more fully above was sufficiently severe or pervasive so as to unreasonably interfere with Plaintiff's work performance, or create an intimidating, hostile or offensive working environment.

75.     Plaintiff also suffered humiliation and emotional distress in that Defendant's unlawful actions caused damage to her health by way of causing her to experience medical problems including but not limited to stomach distress, depression, insomnia, irritability, loss of self-confidence, loss of feelings of self-worth, and a negative state of mind including a sense of angry indignation.

76.     Defendants' discriminatory and retaliatory actions against Plaintiff were taken wantonly, willfully, outrageously or with reckless disregard to Plaintiff's rights.

77.     Defendants intentionally and purposefully interfered with the employment opportunities of Plaintiff because of her gender, causing her damage in violation of 42 U.S.C. 2000 et seq.

## COUNT II: VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT,

12

## 29 U.S.C. § 623 ET SEQ.

78.     Plaintiff re-alleges and repeats the allegations set forth in paragraphs 1 to 70, supra, and incorporates them herein as if fully set forth.

79.     Plaintiff's job performance met Defendants' legitimate expectations as her employer and she was qualified for the position of Office Manager.

80.     Plaintiff suffered adverse employment actions when she was subjected to harassment and a hostile work environment when she was ultimately terminated from her position as Office Manager for MEC.

81.     The unwelcome age discrimination stated more fully above was sufficiently severe or pervasive so as to unreasonably interfere with Plaintiff's work performance, or create an intimidating, hostile or offensive working environment.

82.     Defendants intentionally and purposefully interfered with the employment opportunities of Plaintiff because of her age, causing her damage in violation of 29 U.S.C. 632(a).

83.     As a direct and proximate result of the unlawful practices, Plaintiff has suffered loss of wages, benefits, experience, and career advancement, as well as mental anguish and humiliation.

84.     Defendants' discriminatory and retaliatory actions against Plaintiff were taken wantonly, willfully, outrageously or with reckless disregard to Plaintiff's rights.

### PRAYER FOR RELIEF ON PLAINITFF'S TITLE VII AND ADEA CLAIMS

WHEREFORE Plaintiff respectfully prays that the Court:

   a.   Grant judgment against Defendants for such equitable and other relief for violation of Plaintiff's civil rights as provided by 42 U.S.C. § 2000e-5(g), the

ADEA.

b. Award Plaintiff her back pay from the date of termination until the date of judgment, including prejudgment interest, and reimbursement for any and all out-of-pocket incidental expenses.  Plaintiff also prays for the value of lost vacation time, lost sick leave time, retirement, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the civil rights violations described above in an amount not less than $50,000.00 on each claim;

c. Award Plaintiff punitive damages against Defendants for violation of her civil rights in an amount not less than $50,000.00 on each claim;

d. Issue a permanent injunction ordering Defendants to cease and desist from all acts of discrimination and harassment, and retaliation against anyone in its employ on the basis of sex;

e. Order Defendant MEC to develop, implement, and enforce a remediation program consistent with state and federal law to ensure that all female and elderly employees are treated equally and without regard to their age or gender;

f. Order that Plaintiff is reinstated to her position as office manager;

g. Grant to Plaintiff an award of her costs of litigation, including reasonable attorney fees and reasonable expenses; and

h. Grant such other and further relief as this Court deems just and proper in the premises.

## COUNT III: GENDER DISCRIMINATON IN VIOLATION OF MISSOURI HUMAN RIGHTS ACT, § 213.055 RSMo.

85.      Plaintiff re-alleges and repeats the allegations set forth in paragraphs 1 to 70, supra, and incorporates them herein as if fully set forth.

14

86.     Plaintiff is a 56-year-old woman and therefore a member of two protected classes under §§ 213.010 and 213.055.

87.     She was qualified to perform the job she was performing at all times that she was employed at MEC.

88.     Plaintiff was subjected to adverse employment actions, including refusal to give her a regular raise, reduction and reassignment of her duties, and termination, and there are facts that give rise to a strong inference of unlawful gender and/or age discrimination.

89.     Defendants had no legitimate, non-discriminatory, and credible explanation for their treatment of Plaintiff.  Plaintiff's protected status was a contributing factor in the adverse actions taken against her by Defendants.

90.     Defendants' conduct and adverse employment actions in violation of MHRA caused Plaintiff continued and intense emotional distress.

91.     Defendants' conduct and adverse employment action in violation of MHRA were outrageous because of Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiff to an award of punitive damages in addition to her actual damages.

WHEREFORE, Plaintiff Kathryn Smith respectfully prays for the following relief:

1.     That the Court declares that the conduct Plaintiff complains of herein violates the MHRA;

2.     That Plaintiff be awarded back pay from the date of termination until the date of judgment, including prejudgment interest, and reimbursement for any and all out-of-pocket incidental expenses.  Plaintiff also prays for the value of lost vacation time, lost sick leave time, retirement, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the civil rights violations described above in an amount not

15

less than $250,000.00;

3.      That Plaintiff be awarded punitive damages against Defendants for violation of

the MHRA, and for humiliation and emotional distress in that Defendant's unlawful

actions caused damage to her health by way of causing her to experience medical

problems including but not limited to stomach distress, depression, insomnia, irritability,

loss of self-confidence, loss of feelings of self-worth, and a negative state of mind

including a sense of angry indignation in an amount not less than $5,000,000.00;

4.      A permanent injunction ordering Defendants to cease and desist from all acts of

discrimination and harassment, and retaliation against anyone in its employ on the basis

of sex;

5.      That Defendant MEC develops, implements, and enforces a remediation program

consistent with state and federal law to ensure that all female and elderly employees are

treated equally and without regard to their age or gender;

6.      That Plaintiff is reinstated to her position as office manager;

7.      That Plaintiff be awarded her reasonable attorney's fees and costs;

8.      That Plaintiff be awarded such other legal and equitable relief as this Court deems

just and proper.

## COUNT IV: UNLAWFUL RETALIATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT, § 213.070, RSMo

92.      Plaintiff re-alleges and repeats the allegations set forth in paragraphs 1 to 70,

supra, and incorporates them herein as if fully set forth.

93.      Defendants retaliated against Plaintiff for complaining of discrimination,

harassment, and hostile work environment in her October 11, 2014 letter, her November 18,

2014 letter, her November 20, 2014 letter, and the First Charge, by escalating the harassment,

hostility, and retaliation and ultimately by terminating Plaintiff.

94.     Plaintiff notified Defendants on multiple occasions during her employment that she was being subjected to discrimination, harassment, a hostile work environment, and retaliation, because of her sex, her age, and her complaints of such treatment.

95.     Defendants continued and intensified their retaliatory conduct even after being notified that their conduct was discriminatory, harassing, and retaliatory and that it created a hostile work environment.

96.     Plaintiff complaining of unlawful discrimination was a contributing factor in the the defendants' actions to create a hostile work environment and ultimately terminate plaintiff.

97.     Defendants' conduct and adverse employment actions in violation of MHRA caused Plaintiff continued and intense emotional distress.

98.     Defendants' conduct and adverse employment action in violation of MHRA were outrageous because of Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiff to an award of punitive damages in addition to her actual damages.

WHEREFORE, Plaintiff Kathryn Smith respectfully prays for the following relief:

1.     That the Court declares that the conduct Plaintiff complains of herein violates the MHRA;

2.     That Plaintiff be awarded back pay from the date of termination until the date of judgment, including prejudgment interest, and reimbursement for any and all out-of-pocket incidental expenses.  Plaintiff also prays for the value of lost vacation time, lost sick leave time, retirement, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the civil rights violations described above in an amount not less than $250,000.00;

3.     That Plaintiff be awarded punitive damages against Defendants for violation of the MHRA, and for humiliation and emotional distress in that Defendant's unlawful actions caused damage to her health by way of causing her to experience medical problems including but not limited to stomach distress, depression, insomnia, irritability, loss of self-confidence, loss of feelings of self-worth, and a negative state of mind including a sense of angry indignation in an amount not less than $5,000,000.00;

4.     A permanent injunction ordering Defendants to cease and desist from all acts of discrimination and harassment, and retaliation against anyone in its employ on the basis of sex;

5.     That Defendant MEC develops, implements, and enforces a remediation program consistent with state and federal law to ensure that all female and elderly employees are treated equally and without regard to their age or gender;

6.     That Plaintiff is reinstated to her position as office manager;

7.     That Plaintiff be awarded her reasonable attorney's fees and costs;

8.     That Plaintiff be awarded such other legal and equitable relief as this Court deems just and proper.

## COUNT V: HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT, § 213.070, RSMo

99.     Plaintiff re-alleges and repeats the allegations set forth in paragraphs 1 to 70, supra, and incorporates them herein as if fully set forth.

100.     Plaintiff is a member of the protected class under the MHRA on the basis of her age and sex.

101.     Plaintiff was subjected to unwelcome age and/or gender harassment and retaliation for complaining of discrimination, harassment, and hostile work environment in her

18

October 11, 2014 letter, her November 18, 2014 letter, her November 20, 2014 letter, and the

First Charge

102.    Plaintiff's age and/or gender was a contributing factor in the unwelcomed

harassment and retaliation.

103.    Plaintiff's work performance, job duties, status and employment was affected by

the harassment and retaliation.

104.    Defendants knew or should have known of the unwelcomed harassment and

retaliation and failed to take appropriate action.

105.    Plaintiff notified Defendants on multiple occasions during her employment that

she was being subjected to discrimination, harassment, a hostile work environment, and

retaliation, because of her sex, her age, and her complaints of such treatment.

106.    Defendants continued and intensified their retaliatory conduct even after being

notified that their conduct was discriminatory, harassing, and retaliatory and that it created a

hostile work environment.

107.    Defendants' conduct and adverse employment action in violation of MHRA were

outrageous because of Defendants' evil motive or reckless indifference to the rights of others,

entitling Plaintiff to an award of punitive damages in addition to her actual damages.

WHEREFORE, Plaintiff Kathryn Smith respectfully prays for the following relief:

1.    That the Court declares that the conduct Plaintiff complains of herein violates the

MHRA;

2.    That Plaintiff be awarded back pay from the date of termination until the date of

judgment, including prejudgment interest, and reimbursement for any and all out-of-

pocket incidental expenses.  Plaintiff also prays for the value of lost vacation time, lost

19

sick leave time, retirement, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the civil rights violations described above in an amount not less than $250,000.00;

3.      That Plaintiff be awarded punitive damages against Defendants for violation of the MHRA, and for humiliation and emotional distress in that Defendant's unlawful actions caused damage to her health by way of causing her to experience medical problems including but not limited to stomach distress, depression, insomnia, irritability, loss of self-confidence, loss of feelings of self-worth, and a negative state of mind including a sense of angry indignation in an amount not less than $5,000,000.00;

4.      A permanent injunction ordering Defendants to cease and desist from all acts of discrimination and harassment, and retaliation against anyone in its employ on the basis of sex;

5.      That Defendant MEC develops, implements, and enforces a remediation program consistent with state and federal law to ensure that all female and elderly employees are treated equally and without regard to their age or gender;

6.      That Plaintiff is reinstated to her position as office manager;

7.      That Plaintiff be awarded her reasonable attorney's fees and costs;

8.      That Plaintiff be awarded such other legal and equitable relief as this Court deems just and proper.

JOHNSTON & SMITH, LLC
Respectfully Submitted,

s/   George S. Smith
George S. Smith,
Mo. Bar #53019MO
2800 Forum Blvd., Suite 3
Columbia, MO 65203

573-499-1616
573-449-3004 (fax)
*Attorney for Plaintiff Kathryn A. Smith*